IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| MYRION STAPLETON, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | |
| CAROLYN W. COLVIN, Acting | * | No. 3:13CV00242-JJV |
| Commissioner, Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Myrion Stapleton, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") finding that he was no longer disabled, and, therefore, no longer eligible for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") or for supplemental security income ("SSI") benefits under Title XVI of the Act.  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.    BACKGROUND**

On December 14, 2007, Mr. Stapleton was found disabled as of April 6, 2006.  However, on February 5, 2010, it was determined that, as of February 1, 2010, he was no longer disabled.  His claims were denied upon reconsideration.  At Mr. Stapleton's request, an Administrative Law Judge ("ALJ") held a hearing on May 29, 2012, where Mr. Stapleton appeared pro se.  (Tr. 25)  At the hearing, the ALJ heard testimony from Mr. Stapleton and a vocational expert ("VE").  (Tr. 26-55)

The ALJ issued a decision on October 9, 2012, finding that as of February 1, 2010, Mr. Stapleton was no longer disabled under the Act.  (Tr. 11-19)  On October 17, 2013, the Appeals

Council denied Mr. Stapleton's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Stapleton, who was twenty-nine years old at the time of the hearing, has a high school education. (Tr. 31) He has past relevant work experience as an order filler and grocery stocker. (Tr. 46-47)

## II.   DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ noted that the most recent favorable medical decision finding him disabled, also known as a "comparison point decision" ("CPD"), was dated December 15, 2007. When the CPD was issued, Ms. Stapleton had the following impairments: fractures of both forearms, fractures in both tibias, right femur fracture, and cervical burst fracture. However, the ALJ found that as of February 1, 2010, Mr. Stapleton no longer had an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 13)

According to the ALJ, Mr. Stapleton has the residual functional capacity ("RFC") to do sedentary work, but he would be limited to simple tasks with supervision that is simple, direct, and concrete. (Tr. 14) In response to a post-hearing interrogatory, the VE found that the jobs available with these limitations were production assembler and escort vehicle driver. (Tr. 263)

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if not, whether there has been medical improvement; (4) if so, is the improvement related to the ability to work; (5) if no medical improvement, whether any exceptions apply; (6) whether the current impairments (or combination of impairments) are severe; (7) whether the current impairments (or combination of impairments) prevented the claimant from performing past relevant work; and (8) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(1)-(8) and 416.994(b)(5)(i)-(viii).

[2] 20 C.F.R. §§ 404.1525, 404.1526, and 416.926.

After considering the VE's testimony, the ALJ determined that Mr. Stapleton could perform a significant number of other jobs existing in the national economy, and found that Mr. Stapleton was not disabled.

## III. ANALYSIS

### A. Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B. Mr. Stapleton's Arguments for Reversal

Mr. Stapleton asserts that the Commissioner's decision should be reversed because the determination that he is no longer disabled because of medical improvement is not supported by substantial evidence.

Medical improvement is defined as:

any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1).

While there may be some evidence that Mr. Stapleton continues to have limitations related to his original impairments, the ALJ's finding that he could perform sedentary work is supported by the record. *Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.") The ALJ correctly relied on the following when noting Mr. Stapleton's improvement and discrediting his claims to the contrary:

**(1) Gaps in Treatment**[3] – The ALJ noted that there "are significant gaps in the treatment history since February 1, 2010." (Tr. 16). Based on the medical records, before February 16, 2010, Mr. Stapleton had not visited a doctor about his conditions since July 2009. (Tr. 275, 277-279) Yet, after Mr. Stapleton was informed on February 10, 2010, that his benefits were being cut off, his doctor visits increased significantly. For example, in 2010, he visited his general practitioner ("GP") on February 16, orthopedist on February 18 and again on March 23, and his GP again on May 24. (Tr. 393, 396, 419, 421) Then there is a four month gap before he visits his GP again in September and then both his GP and orthopedist in November. (Tr. 390, 415, 417) In 2011, he visited his doctors in February, April, June, August, and December. (Tr. 387, 406, 407, 409, 411, 413) In 2012 it was just March, September and October. (Tr. 398, 402, 405) The dearth of doctor visits before February 2010, followed by a surge, then tapering off, are things the ALJ could consider when addressing Mr. Stapleton's credibility.

**(2) Medicines Help**[4] – The ALJ found that Mr. Stapleton's "[i]mpairments are under good control with medication and do not more than minimally affect his ability to carry on basic work

---

[3]*Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir.2003) (An ALJ may weigh the credibility of a claimant's subjective complaints of pain by considering multiple factors, including whether or not the claimant seeks regular medical treatment.).

[4]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

4

activity." (Tr. 16)   In November 2010, the orthopedist noted that physical therapy helps decrease stiffness and the "TENS helps decrease pain but does not alleviate all pain." (Tr. 388) Mr. Stapleton also advised his doctor that the stiffness is mainly in the morning. (*Id.*) Again on April 12, 2011, the doctor noted that the TENS unit helps. (Tr. 387)  In October 2012, it was noted that naproxen helps the pain a little bit.

(3) **Conservative Treatment**[5] – Since 2010, Mr. Stapleton has undergone only routine, conservative treatment.  He was prescribed medications and gels, told to exercise, told to try a knee brace, prescribed a cane, and advised to lose weight.  (Tr. 278, 390, 392)

(4) **Refusal to Follow Course of Treatment**[6] – Though Mr. Stapleton did not exactly refuse to follow a course of treatment, he has repeatedly rejected recommendations from his doctor that might relieve his symptoms and pain.  In November 2010, the orthopedist "[d]iscussed steroid injection, but [Mr. Stapleton] prefers not to have an injection for now." (Tr. 390)  In June 2011, Mr. Stapleton advised his GP that he had "refused [steroid injections] in the past but is willing to do it now." (Tr. 411) However, it does not appear that Mr. Stapleton ever followed through, since notes from August 15, 2011, indicate that Mr. Stapleton still had not contacted his orthopedist to schedule a steroid injection.  (Tr. 410)  In fact, he did not see his orthopedist again until September 2012 – over a year later – and even then, it does not appear that he got the injection.  (Tr. 398-400)

In April 2011, Mr. Stapleton and his orthopedist "[d]iscussed screw removal, but [Mr. Stapleton] prefers not to have surgery at this time." (Tr. 387)  This topic was discussed again in September 2012, but Mr. Stapleton still was not interested in having the screws removed from his

---

[5]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (finding that an ALJ may rely on the fact that a claimant has undergone only conservative treatment when evaluating the severity of the impairments).

[6]*Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005) ("A failure to follow a recommended course of treatment ... weighs against a claimant's credibility.).”

5

ankles. (Tr. 399)

**(5) Cooperation** – The ALJ also properly considered the fact that Mr. Stapleton was considered uncooperative at his July 6, 2010, mental examination. The doctor noted that he was "very poorly motivated" and "not doing his best." (Tr. 291, 293) Incidentally, Mr. Stapleton argues that the ALJ "should have further developed the record" regarding his intelligence, but this argument is without merit. (Doc. No. 13) Again, Mr. Stapleton was not trying at his mental exam, and the results are inconsistent with his functional abilities, *e.g.*, he made A's to C's when in regular classes in high school. Additionally, none of the medical records indicate any issues with Mr. Stapleton's mental abilities.

**(6) Daily Activities** – The ALJ considered Mr. Stapleton's daily activities and determined that many of the limitations appeared to be either self-imposed or enabled by his aunt, who takes care of him. (Tr. 16-17) The ALJ also noted that there were no functional limitations placed on him by his treating doctors.[7] According to Mr. Stapleton, he is "not able to work, [because he] can't stand to stand a long period of time . . . ." (Tr. 100) However, he makes no claims about his ability to sit or perform sedentary work. In fact, Mr. Stapleton indicated that he has "to sit the majority of days" and he plays video games about three hours a day. (Tr. 40, 232) His only complaint from sitting is that he gets stiff after sitting too long and has to move around. (Tr. 43) Notably, his doctors have recommended "low impact activities" and "gentle home exercises" to help with his conditions. (Tr. 390, 392)

## IV.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the

---

[7]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (affirming ALJ's finding when he considered, among other things, that "there were no functional restrictions [placed on claimant] by doctors").

transcript of the hearing, and the medical and other evidence.  There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Mr. Stapleton's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 15th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE